**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| DERRICK K. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 304-142 |
| | ) |
| JAMES DONALD, Commissioner; et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Derrick K. Smith, an inmate incarcerated at Central State Prison ("CSP") in Macon, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. As Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A.

On March 24, 2005, this Court entered a Report and Recommendation that recommended dismissal of Plaintiff's case without prejudice for failure to state a claim upon which relief could be granted. Specifically, the Court determined that Plaintiff had failed to exhaust his administrative remedies prior to filing this lawsuit on all but one claim in the

complaint, and the remaining claim against Defendant McGhee was barred by the statute of limitations. (See doc. no. 14). In his objections to that Report and Recommendation, Plaintiff voiced his disagreement with the Court's analysis on several issues, and in an effort to avoid the exhaustion bar, he submitted an affidavit swearing that he was prevented from exhausting his administrative remedies with respect to the claims arising at Wheeler Correctional Institution ("WCI") by a prison official who affirmatively told him that he could not file an appeal.[1] (See doc. no. 17, p. 2).

## I. **BACKGROUND**

Upon review of Plaintiff's amended complaint, the Court finds the following.[2] Plaintiff filed the instant § 1983 action against eighteen (18) Defendants complaining about his alleged exposure to environmental tobacco smoke ("ETS") at both his current place of confinement, Central State Prison ("CSP"), and his former place of confinement, WCI. According to Plaintiff, he was confined at WCI from March of 2000 until April of 2004. While at WCI, Plaintiff maintains that he complained to variously named prison officials about being exposed to high levels of ETS and asked to be housed in a non-smoking

---

[1]The situation in this case concerning being told that he could not appeal the denial of his WCI grievance is analogous to Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999). In Miller, the Eleventh Circuit found that the plaintiff had been prevented from pursuing an appeal of his grievance because a prison official told him in unambiguous terms that his appeal was prohibited. Id. at 1194.

[2]On December 29, 2004, the Court attempted to screen Plaintiff's complaint. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 10). Plaintiff was specifically informed that his amended complaint would supersede and replace in its entirety the previous complaint. (Doc. no. 10, p. 4 (citing Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) and King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)). Plaintiff submitted an amended complaint (doc. no. 11), and it is that document that the Court will now screen.

dormitory because the ETS was aggravating his pulmonary sarcoidosis. Not only did prison officials not accommodate Plaintiff's request, but Defendant McGhee, a correctional officer at WCI, allegedly placed Plaintiff in physical danger by announcing on December 24, 2000, to the other inmates in Plaintiff's dormitory that he had been complaining about their smoking and urging them to "deal with [Plaintiff]." (Doc. no. 11, p. 5H). Plaintiff also maintains that the Georgia Department of Corrections and the Corrections Corporation of America, Inc. ("CCA") have rules in place that prohibit smoking in the dormitories, but "these rules are unenforced or underenforced. . . . In reality, the prison sub-culture promotes in-door smoking, and it is given that prisoners will smoke in the dorms."[3] (Id. at 5-5B).

Moreover, Plaintiff contends that despite a transfer to CSP in April of 2004, he is still being exposed to high levels of ETS. According to Plaintiff, his exposure to ETS violates his Eighth and Fourteenth Amendment rights, as well as the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Plaintiff seeks injunctive relief in the form of an Order from the Court directing that all smoking in prisons be halted, as well as other injunctive, prospective, and equitable relief; Plaintiff also seeks monetary damages.

Plaintiff alleges that he filed grievances, wrote letters, and made numerous requests to the medical department at WCI concerning his exposure to ETS; he also states that his appeals "in wheeler correctional facility . . . were denied." (See doc. no. 11, pp. 4, 5G-5H). Plaintiff specifically references a grievance written on December 12, 2000 as an example of a grievance that he wrote concerning his ETS exposure. (Id. at 5G). Plaintiff maintains that he tried to appeal the denial of this December 12th grievance, but he was told by prison

---

[3]CCA is the private corporation that operates WCI.

3

officials that he could not file an appeal because the grievance was closed at the institutional level. (See doc. no. 17, p. 2). As to his claims against officials at CSP, which include exposure to excessive amounts of ETS and violations of the ADA and Rehabilitation Act, Plaintiff candidly admits that his administrative appeals were still pending at the time he filed his amended complaint. (Doc. no. 11, p. 4).

## II. **DISCUSSION**

### A. **Exhaustion Requirement**

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Furthermore, 42 U.S.C. § 1997e(c)(1) provides that the Court shall dismiss any action brought under 42 U.S.C. § 1983 concerning prison conditions if the action fails to state a claim upon which relief can be granted on its own motion or the motion of a party. In the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998)[4]; see also Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998) (finding that a prisoner lawsuit in which the denial of a grievance was not appealed must be dismissed under § 1997e).

---

[4]The Court notes that in Plaintiff's objections to the Court's March 24, 2005 Report and Recommendation, Plaintiff complained that the Court should not have raised the issue of exhaustion *sua sponte*. However, he also conceded that the Eleventh Circuit has not ruled that exhaustion can only be raised as an affirmative defense once an answer is filed. In fact, the Eleventh Circuit has cited with approval instances in which a court has recognized the exhaustion issue at the screening stage and dismissed a complaint without prejudice for failing to allege exhaustion of administrative remedies. See Rivera, 144 F.3d at 731.

4

Furthermore, the Eleventh Circuit Court of Appeals has held that as a result of the Prison Litigation Reform Act, ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), § 1997e requires that all claims be submitted to the prison grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). The Court no longer has discretion to waive the exhaustion requirement.[5] Id. at 1325. Indeed, the Supreme Court has clarified "that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

1. **Failure to Exhaust Claims Arising at CSP**

Under the Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. SOP IIB05-0001 § VI(B)(12)-(13). If unsatisfied with the

---

[5]Suits regarding "prison conditions" include claims "with respect to the conditions of confinement or the effects of action by government officials on the lives of persons confined in prison." Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000)(*per curiam*). Accordingly, Plaintiff's complaints about his exposure to ETS and access to services and programs available at his institution of confinement are subject to the administrative exhaustion requirements.

5

resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond.[6] Id. § VI(D)(2),(5).

In the case at bar, Plaintiff candidly admits that his administrative appeals regarding his claims at CSP were still pending at the time he filed his amended complaint. (Doc. no. 11, p. 4). Plaintiff's claims against CSP officials include exposure to excessive amounts of ETS and violations of the ADA and Rehabilitation Act. As discussed in detail above, administrative remedies must be exhausted prior to commencing a federal lawsuit. See Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*) (exhausting administrative remedies is "precondition to filing an action in federal court"); Miller v. Tanner, 196 F.3d 1190, 1192-93 (11th Cir. 1999) (same). As Plaintiff has not exhausted his administrative remedies regarding his claims at CSP, those claims cannot form the basis for relief in this case.

---

[6]Over the period of time covered by Plaintiff's amended complaint, the statewide grievance procedure has undergone various revisions. However, these revisions have not altered the general procedure that decisions on grievances at the institutional level may be appealed to the Office of the Commissioner or that the Commissioner's Officer has ninety days to respond to an appeal.

6

Plaintiff attempts to avoid this conclusion by explaining in his objections and accompanying affidavit that what he really meant to say was that the appeals were still pending because the 90-day period allowed for responding to a grievance had not expired at the time he filed the original complaint; however, by the time he filed his amended complaint, the time limit had expired, and therefore his claims should be deemed to be exhausted. (Doc. no. 16, pp. 7-8). This argument fails. Eleventh Circuit case law is clear that administrative remedies must be exhausted prior to the commencement of a lawsuit. Amending allegations of exhaustion into a complaint after it has been filed is not sufficient. Harris v. Garner, 216 F.3d 970, 973-76 (discussing necessity of meeting PLRA requirements for filing at time lawsuit is commenced, not as circumstances of case evolve). Moreover, to the extent Plaintiff asserts that the amendment provisions of Rule 15 allow him to add allegations of exhaustion, that argument also fails. Id. at 982 (rejecting argument of conflict between Rule 15 and PLRA but recognizing that even if there were a conflict, the Rule must yield to the later-enacted statute).

As Plaintiff did not exhaust his administrative remedies concerning any claims arising at CSP prior to commencing the above-captioned case, those claims and the defendants associated therewith, should be dismissed.[7]

---

[7]Those individuals include Hilton Hall, Thomas Nelson, Arthur Gordon, William Czarneski, and Christopher Suber. To the extent that Plaintiff has raised claims against Defendants Wetherington, Donald, Adams, and the Georgia Department of Corrections based on events at CSP, those claims are also due to be dismissed. The status of these Department of Corrections officials with respect to the smoking at WCI are addressed *infra*.

7

## 2. Failure to Exhaust ADA and Rehabilitation Act Claims at WCI

As discussed above, Plaintiff's claims arising at CSP are due to be dismissed because Plaintiff failed to exhaust his administrative remedies prior to the commencement of this lawsuit. However, in his objections, Plaintiff complains that the Court incorrectly presumed in its March 24 Report and Recommendation that Plaintiff's ADA and Rehabilitation claims are only against officials either at CSP or Department of Corrections officials who are involved with the current administration/operation of CSP because (1) the ADA is not mentioned anywhere in the grievances filed at WCI, (2) as Plaintiff seeks injunctive relief to gain access to certain programs which he claims are unavailable to him, the only officials who could theoretically provide such access are those currently in charge of his care and custody, and (3) his description of the ways in which he is allegedly denied "programs" or "activities" for liability purposes under the ADA and Rehabilitation Act are related to his incarceration at CSP. (See doc. no. 16, pp. 8-10; doc. no. 11, p. 5D). However, the Court's presumption is further bolstered by Plaintiff's candid acknowledgment that the grievances he filed at WCI did not mention the ADA or the Rehabilitation Act. (Doc. no. 16, p. 10; (see also Smith v. Kemp, CV 303-047 (S.D. Ga. July 31, 2003), doc. no. 1, Exs. 1-5 (copies of grievances)).[8,9]

Plaintiff contends that so long as his grievances made prison officials aware of the ETS, he need not specifically mention a particular legal theory. While it is true that under

---

[8]This Court has the authority to take judicial notice of its own documents. United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

[9]Plaintiff voluntarily dismissed his prior claims. (CV 303-047, doc. nos. 44 & 45).

8

Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000), a prisoner need only make the "crux" of his complaints known in a grievance in order to satisfy the PLRA's exhaustion requirement, there is nothing to suggest that Plaintiff alerted anyone at WCI that the smoke about which he was complaining was preventing him from participating in "activities" and "programs" such that he could be considered to have exhausted such claims at WCI. There is simply no way to equate a generic request for a cell change or additional medical treatment because of exposure to ETS with alerting WCI officials that Plaintiff was unable to participate in any "activities" or "programs" at the prison - the claim upon which Plaintiff bases his ADA and Rehabilitation Act claims. Brown requires that the "prisoner provide during the grievance process all of the information concerning his claims that he has or reasonably could obtain." 216 F.3d at 1210; see also Goldsmith v. White, 357 F. Supp.2d 1336, 1339 (N.D. Fla. 2005) ("[I]f an inmate was not required to provide enough information to allow prison officials to investigate the inmate's real complaint, the purposes for which Congress adopted the exhaustion required would not be met. Thus . . . 'inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" (citation omitted)). Certainly at the time Plaintiff complained about exposure to ETS he would have known if he was being denied access to activities and programs because of the exposure, but he said nothing about such a deprivation in his grievances. Thus, Plaintiff failed to exhaust his administrative remedies as to any ADA or Rehabilitation Act claims arising at WCI.

## B. Supervisory Liability

Plaintiff also attempts to bring claims against James Donald, the current Commissioner of the Georgia Department of Corrections ("DOC"), Jim Wetherington, the former Commissioner of the DOC, Alan Adams, the Facilities Director for the DOC, the DOC itself, and CCA, the private corporation operating WCI. As discussed above, because Plaintiff failed to exhaust his administrative remedies prior to commencing this lawsuit with respect to his ADA and Rehabilitation Act claims and ETS exposure at CSP, the Court will confine its analysis to these Defendants as to Plaintiff's claims of exposure to ETS at WCI.

### 1. DOC and its Supervisory Officials

Even if a Plaintiff alleges a constitutional violation, the Eleventh Amendment bars official capacity damage actions against state prison officials.[10] Kentucky v. Graham, 473 U.S. 159, 169 (1985). Furthermore, in the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has not alleged that

---

[10]The Court is aware that Plaintiff also seeks damages against these officials in their individual capacities, but for the reasons set forth herein, he has not sufficiently connected them to the alleged wrongs.

Defendants Donald, Wetherington, or Adams were personally involved in enforcing the smoking policy at WCI or in determining Plaintiff's housing assignment. Nor has Plaintiff explained how the DOC itself, as an organizational entity, can be held liable for the actions of individuals at WCI.

Similarly, Plaintiff fails to allege a "causal connection" between Defendants Donald, Wetherington, Adams, and the DOC and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[11] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff concedes that there is a DOC policy against smoking, but he complains that it is unenforced or "underenforced" in the dormitories. However, there is nothing to suggest that these supervisory officials knew about widespread non-enforcement of the smoking regulations

---

[11]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

11

or had a policy that resulted in non-enforcement. Indeed, the very existence of a no smoking policy belies a conclusion that these supervisory officials had a custom or policy resulting in deliberate indifference to Plaintiff's constitutional rights.[12] Accordingly, these supervisory officials and organizational entity should be dismissed from this case.

2. **CCA**

Private contractors, like CCA, that run prisons act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). However, such a contractor cannot be held liable under § 1983 on a respondeat superior or vicarious liability basis. Monell, 436 U.S. at 691. Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort. Id. Although Monell involved municipal corporations, the Eleventh Circuit has extended Monell's holding to private corporations. Harvey v. Harvey, 949 F.2d 1127, 1129-

---

[12]Moreover, if Plaintiff is attempting to state a stand alone claim for an alleged failure to properly process his grievances, that allegation, too, fails to state a claim for relief. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. In a nutshell, Plaintiff's bare allegations concerning deficiencies in processing his grievances do not implicate his federal constitutional rights. See id.; see also Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (*per curiam*) (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").

30 (11th Cir. 1992). Here, Plaintiff alleges that the CCA has a policy of allowing prisoners to smoke tobacco, but he also concedes that prisoners are prohibited from smoking in the dormitories. (Doc. no. 11, pp. 5-5B). Plaintiff does not allege that CCA has a policy or custom of "underenforcing" these smoking rules, only that the "prison sub-culture promotes in-door smoking." (Id. at 5B). As there has been no allegation of a custom or policy by CCA to ignore the acknowledged DOC rules and regulations which prohibit smoking in the dormitories, CCA should be dismissed from the case.

C.  **Statute of Limitations**

Finally, the Court turns its attention to Plaintiff's only remaining claim based on the allegation that on December 24, 2000, Defendant McGhee "stood before the prisoners in the dorm at Wheeler and announced that Plaintiff had been telling on prisoners smoking in the dorm, and told the prisoner's to 'deal with him.'" (Doc. no. 11, p. 5H). Plaintiff alleges that this action by Defendant McGhee not only failed to serve as a corrective measure concerning the ETS, but also put Plaintiff in physical danger of retaliation by other prisoners. Although the Court has sanctioned an Eighth Amendment claim against Defendant McGhee based on Plaintiff's exposure to ETS, his claim that Defendant McGhee's announcement put him in physical danger from the other inmates is subject to dismissal under the applicable two-year statute of limitations in Georgia.[13] See Lawson v. Glover, 957 F.2d 801, 803 (11th Cir.

---

[13] According to Plaintiff, he filed Grievance Number 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 on December 29, 2000 regarding Defendant McGhee's actions, but both the Warden and the Commissioner of the Department of Corrections denied his grievance. (Doc. no. 11, p. 5H).

13

1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996); Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980). Under § 1983, a claim accrues when the plaintiff knows or has reason to know that he was injured, and he must be aware or should be aware who injured him. Rozar, 85 F.3d at 562. Plaintiff did not file the instant lawsuit until November of 2004, almost four years after Defendant McGhee allegedly stood before the other prisoners and announced that Plaintiff had been complaining about smoking.

As Plaintiff has known for longer than two years that he was allegedly injured by Defendant McGhee putting him in physical danger from the other inmates on December 24, 2000, and his complaint was not filed within the two-year statute of limitations period, this claim is time-barred.[14] Accordingly, the claim related to Defendant McGhee's actions on December 24, 2000 should also be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Hall, Nelson, Gordon, Czarneski, Suber, Donald, Wetherington, Adams, the

---

[14]When screening a prisoner complaint, a court may dismiss claims prior to service when it is clear from the face of the complaint that the claims are time-barred. Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003). Here, it is clear from the face of the complaint that a claim concerning a one-time announcement on December 24, 2000 is barred by the statute of limitations.

14

Georgia Department of Corrections, and CCA be **DISMISSED** from this case.[15]

SO REPORTED and RECOMMENDED this 17th day of May, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[15] By separate Order, the Court has directed that service of process be effected by the United States Marshal on Defendants Ralph Kemp, Walt Wells, Rick Looney, Joseph Burnette, Lt. McGhee, Christopher Ashley, Patricia R. Clark, and Mr. Fowler based on the allegations of deliberate exposure to harmful second-hand smoke at WCI.

15

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

Derrick Smith, Pro-se

CASE NO: CV304-142

DATE SERVED: May 17, 2005

SERVED BY: Cindy Reynolds CR

☐ Copy placed in Minutes
☐ Copy given to Judge
☑ Copy given to Magistrate