ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 AUG 11 PM 1: 32

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| DERRICK SMITH, ) | |
| Plaintiff, ) | |
| v. ) | CV 304-142 |
| RICK LOONEY et al., ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding pro se, filed a complaint under Title 42, United States Code, Section 1983. Defendants Looney, Fowler, Burnett, and McGhee have filed a motion for summary judgment. Plaintiff responded in opposition to the motion. For the reasons that follow, the Court recommends that the summary judgment motion be **GRANTED**, that judgment be **ENTERED** in favor of Defendants Looney, Fowler, Burnett, and McGhee, and that this civil action be **CLOSED**.

## I. FACTS

Plaintiff, an inmate at Hays State Prison in Trion, Georgia, was confined at Wheeler Correctional Facility ("Wheeler") in Alamo, Georgia, from March 2000 to April 2004. On November 10, 2004, he filed this Section 1983 action in which he alleges that he suffers from pulmonary sarcoidosis and that his condition worsened during his time at Wheeler because

prison officials allowed him to be exposed to environmental tobacco smoke ("ETS").[1] He names as defendants Ralph Kemp, the Warden at Wheeler; Walt Wells, a Deputy Warden at Wheeler; Rich Looney, a former Deputy Warden at Wheeler; Joseph Burnett, Chief of Security at Wheeler; FNU McGhee, a correctional officer at Wheeler; Christopher Ashley, a Unit Manager in plaintiff's unit at Wheeler; Patricia Clark, Health Service Administrator at Wheeler; and FNU Fowler, a Georgia Department of Corrections ("GDC") "state monitor." Plaintiff alleges that each defendant was aware of his medical condition and nevertheless refused to reduce his exposure to ETS at Wheeler.[2]

While Wheeler is a privately owned prison facility, it houses state prisoners and is governed by the policies and procedures of the GDC. GDC Standard Operating Procedure IIA09-0001 prohibits smoking inside prison facilities. Def. Ex. M ¶5. Plaintiff contends that defendants do not adequately enforce the GDC's no-smoking policy and that Wheeler prisoners frequently smoke inside prison facilities. Plaintiff also argues that the prison facilities are "completely contained, meaning no air can circulate from the outside in[to] the dorms," and thus that no ventilation system allows smoke to leave the facilities.

Plaintiff alleges that he complained to Wheeler medical personnel on fifteen occasions of illnesses related to ETS.[3] On January 4, 2001, a Wheeler physician issued a

---

[1] Plaintiff has presented no medical evidence supporting his assertion that doctors diagnosed him with pulmonary sarcoidosis.

[2] Defendants Kemp, Wells, Clark, and Ashley moved for summary judgment previously, and their motion was granted by the District Judge on March 23, 2006.

[3] While plaintiff references exhibits and affidavits in his response to the summary judgment motion and statement of facts, he does not attach any exhibits or affidavits to his response. Plaintiff also does not incorporate by reference any evidence previously submitted

medical order for plaintiff to be moved from an "open dormitory" to a two-inmate cell. Plaintiff claims that the order was not followed by prison officials, and he was not moved to a two-inmate cell, until June or July of 2001. Defendants, in contrast, state that plaintiff was moved to a two-man cell on the date that the doctor issued the order. Def. Ex. M ¶ 7. Plaintiff also contends that he continued to be exposed to unsafe levels of ETS after being moved to a two-inmate cell because defendants did not enforce the prison's no-smoking policy.

Plaintiff filed a grievance on December 12, 2000. In the grievance, he requested a transfer to a "cell house" because of his ETS exposure. Prison officials denied the grievance because medical staff, at that time, had not yet issued plaintiff an order for a two-inmate cell.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

in this case.

[4] For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III. DISCUSSION

Plaintiff claims that defendants' failure adequately to address ETS exposure levels at Wheeler constituted a deliberate indifference both to his current medical condition, pulmonary sarcoidosis, and to his future medical health. The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners. Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999). The Supreme Court has held that Eighth Amendment claims have both an objective and a subjective component: (1) the prisoner must allege a deprivation that is "sufficiently serious" to implicate constitutional concerns, and (2) the prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the defendant disregarded a risk of harm of which he knew. Id. at 837 (rejecting objective test and adopting subjective one).

Because a prisoner is unable to care for his medical needs as a result of his incarceration, the Eighth Amendment requires prison authorities to provide medical care for those they incarcerate. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Based on this rudimentary principle, the Supreme Court concluded that "deliberate indifference to a

prisoner's serious illness or injury states a cause of action under § 1983." Id. at 105. The Court noted that an official's indifference could be manifested by a "prison doctor['s] . . . [inappropriate] response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05.

The Eleventh Circuit has addressed a prisoner's Eighth Amendment claim based on exposure to ETS. In Kelley v. Hicks, 400 F.3d 1282 (11th Cir. 2005), the court followed the Supreme Court's decision in another ETS exposure case, Helling v. McKinney, 509 U.S. 25, 31 (1993), and observed that "a prisoner can state a cause of action under the Eighth Amendment for exposure to ETS by 'alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health.'" Kelley, 400 F.3d at 1284 (quoting Helling, 509 U.S. at 35).

In order to succeed in a medical indifference claim, a plaintiff must satisfy both objective and a subjective components of the deliberate indifference standard. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). To satisfy the objective component, a plaintiff must show that his medical need is serious, or that the need "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the need for a doctor's attention." Id. at 1187. For the subjective component, a plaintiff must show that the defendant possessed "knowledge of the need for medical care" and displayed "the intentional refusal to provide that care." Id. at 1186.

Plaintiff here claims both that his exposure to ETS exacerbated a pre-existing medical condition, pulmonary sarcoidosis, and constituted a threat to his future medical health. Pulmonary sarcoidosis results in "the formation of scar tissue (fibrosis) in the lungs," which

can interfere with the ability to breathe. <u>Understanding Sarcoidosis-Symptoms</u>, WebMd, http://www.webmd.com/content/article/7/1680_53909.htm (last visited Aug. 9, 2006). While many people suffering from sarcoidosis have mild symptoms and require no treatment, more severe sarcoidosis may require steroid treatment. <u>Understanding Sarcoidosis-Treatment</u>, WebMd, http://www.webmd.com/content/article/7/1680_53908.htm (last visited Aug. 9, 2006).

Plaintiff presents no evidence to indicate the severity of his pulmonary sarcoidosis, or even any medical evidence to support his contention that doctors previously diagnosed him with pulmonary sarcoidosis. The Court also is without evidence concerning whether ETS exacerbates pulmonary sarcoidosis. Thus, the Court is unable to determine, from the evidence before it, the objective severity of plaintiff's condition, if such a condition exists, or whether his condition could have been exacerbated by ETS.

Even assuming that plaintiff does suffer from serious pulmonary sarcoidosis and ETS exacerbates his condition, plaintiff has not shown that defendants were deliberately indifferent to his condition. While plaintiff did make prison officials aware of his condition in his December 12, 2000, grievance, he had not yet been given a medical order for a two-inmate cell when the grievance was denied. Inasmuch as defendants are prison officials, not medical staff, they cannot be imputed with the knowledge of any medical need for plaintiff to be moved to a two-inmate cell when no such medical need has been found by medical staff.

If the Court construes the factual dispute over when prison officials moved plaintiff to the two-inmate cell in favor of plaintiff and assumes that defendants waited six months

7

to move him, plaintiff has not shown that the six-month delay exacerbated his condition.[5] Nothing in the medical record submitted thus far in this case suggests that plaintiff's condition has deteriorated as a result of a delay in moving him to a two-inmate cell, or from the alleged presence of unsafe ETS levels in general. Thus, even construing the facts in favor of plaintiff at every turn, the Court does not find that defendants were deliberately indifferent to plaintiff's sarcoidosis.

Plaintiff also claims, implicitly, that defendants were deliberately indifferent to his future medical needs by causing him to be exposed to ETS. To satisfy the objective component the deliberate indifference standard in an ETS case, "the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy." Kelley, 400 F.3d at 1284 (citations omitted).[6] The subjective component requires a prisoner to "show that prison authorities demonstrated a 'deliberate indifference' to his plight. The adoption of a smoking policy 'will bear heavily on the inquiry into deliberate indifference.'" Id. (quoting Helling, 509 U.S. at 35).

---

[5] Plaintiff also has not exhausted his administrative remedies with regard to the six-month delay of prison officials in moving him to a new cell, as he is required to do by statute. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). In light of the response of prison officials to his prior grievance, his failure to file a grievance during the alleged delay of prison officials in moving him lends probative weight to defendants' position that he was transferred immediately after receiving the order from medical staff. Nevertheless, the Court, for now, construes this fact in favor of plaintiff and assumes that prison staff waited six months to move him.

[6] Regarding the objective component, the Sixth Circuit has further held that exposure to ETS must cause a "serious medical threat, not just discomfort." Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The court observed that "mere exposure to ETS, without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights," and held that ETS exposure must be accompanied by an objectively serious medical condition exacerbated by the exposure. Id.

Regarding the objective component of the deliberate indifference standard, defendants assert, and plaintiff does not contest, that prison regulations prohibit smoking in prison facilities. Plaintiff contends that those rules are not enforced. At least one court, however, has held deliberate indifference to require something more than the imperfect enforcement of a prison's smoking policy. Scott v. District of Columbia, 139 F.3d 940, 944 (D.C. Cir. 1998). The Court also notes that the absence of any grievances filed by plaintiff concerning ETS, apart from the December 12, 2000, grievance in which he requested a move to a two-inmate cell, contradicts his assertion that he was continually exposed to unreasonably high ETS levels.

Regarding the subjective component, defendants encouraged plaintiff to report anyone violating the prison's no-smoking policy. Prison officials also moved plaintiff to a two-inmate cell because of his complaints, and ultimately he was moved from Wheeler altogether. The presence of a no-smoking policy, even if imperfectly enforced, and the actions taken by prison officials to lessen plaintiff's ETS exposure lead the Court to the conclusion that defendants did not act with deliberate indifference to plaintiff's future medical condition.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motion for summary judgment be **GRANTED**. Judgment should be **ENTERED** in favor of Defendants Looney, Fowler, Burnett, and McGhee. Because the other defendants named in plaintiff's complaint have already been either dismissed from this case or granted summary judgment in this case, the Court also recommends that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 11th day of August, 2006, at Augusta, Georgia.

*W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

DERRICK SMITH )

vs )  CASE NUMBER  CV304-142

RICK LOONEY, et al. )  DIVISION  AUGUSTA

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated __Rpt & Recomm__, which is part of the official record of this case.

Date of Mailing:  8/11/06

Date of Certificate  [X] same date,   or _____

Scott L. Poff, Clerk

By: _L. Hbdew_
Deputy Clerk

Name and Address

Derrick Smith, EF 437541 GDC1041621, Hays State Prison, P. O. Box 668, Trion, Ga. 30753
Stephen E. Curry

[X] Copy placed in ~~Minutes~~ Tickler
[ ] Copy given to Judge
[X] Copy given to Magistrate